UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

MCKAYLA CHEESMAN,                                    Case No. 24-CV-1264 (PJS/DTS)

             Plaintiff,

v.                                                                    ORDER

WILLIAMS & FUDGE, INC.,

             Defendant.

---

Peter F. Barry, THE BARRY LAW OFFICE, LTD.; Randall P. Ryder, THE
RYDER LAW FIRM, LLC, for plaintiff.

Bradley R. Armstrong, MOSS & BARNETT, PA, for defendant.

Plaintiff McKayla Cheesman brought this action against defendant Williams &
Fudge, Inc. ("WFI"), a debt-collection agency.  Cheesman alleged that WFI engaged in
unfair debt-collection practices and attempted to debit funds from her bank account
without her consent in violation of the Fair Debt Collection Practices Act ("FDCPA"),
15 U.S.C. § 1692 et seq.; the Electronic Funds Transfer Act, 15 U.S.C. § 1693 et seq.; and
Regulation E, 12 C.F.R. § 1005.3 et seq.

After WFI failed to answer the original complaint, the Clerk of Court entered
WFI's default.  That same day, WFI moved for an extension of time to file an answer.
The motion was granted, and WFI filed its answer.  Approximately four months
later—after very little discovery and no motions practice—Cheesman accepted WFI's

offer of judgment made pursuant to Fed. R. Civ. P. 68  (the "Offer of Judgment").  The

Offer of Judgment entitled her to $6,001.00 in statutory and actual damages.

This matter is before the Court on Cheesman's motion for attorney's fees and

costs.  Cheesman seeks attorney's fees in the amount of $68,320.00.  Pl. Mem., ECF

No. 35 at 34.[1]  WFI objects that this amount of fees is unreasonable.  The Court agrees

and awards Cheesman $26,568.00 in attorney's fees and $502.35 in costs.

## I.  REASONABLE ATTORNEY'S FEES

The starting point for calculating a reasonable fee award is the lodestar—that is,

the number of hours reasonably expended multiplied by a reasonable hourly rate.

*Beckler v. Rent Recovery Sols., LLC*, 83 F.4th 693, 695 (8th Cir. 2023).  "The district court

must exclude from a fee request hours that are excessive, redundant, or otherwise

unnecessary."  *Id.* at 695 (internal quotation marks omitted) (citing *Hensley v. Eckerhart*,

461 U.S. 424, 434 (1983)).

### A.  Hourly Rate

This is a run-of-the-mill consumer lawsuit.  Yet Cheesman is represented by not

one, but two attorneys, and both of those attorneys are extremely experienced

consumer-rights attorneys with top-of-the-class billing rates.  Peter Barry has 28 years of

experience and has handled thousands of consumer lawsuits, ECF No. 36-1 ¶ 5; Randall

---

[1]When citing documents by ECF number, the Court cites to the electronically
generated page numbers at the top of the page.

Ryder has 15 years of experience and has handled hundreds of consumer lawsuits, ECF

No. 37-1 ¶ 5. Cheesman asks that Barry be compensated at a rate of $650 per hour, Pl.

Mem. at 25–26; Barry Decl., ECF No. 36 ¶¶ 14, 16, and that Ryder be compensated at a

rate of $500 per hour, Pl. Mem. at 28; Ryder Decl., ECF No. 37 ¶¶ 15, 17.

"A reasonable hourly rate is usually the ordinary rate for similar work in the

community where the case has been litigated." *Emery v. Hunt*, 272 F.3d 1042, 1048 (8th

Cir. 2001). "[D]istrict courts may rely on their own experience and knowledge of

prevailing market rates." *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005). A district court

has "broad discretion" in awarding attorney's fees, *id.*, and properly considers the

complexity and difficulty of the case and the expertise reasonably required to litigate it

in determining whether an hourly rate is reasonable. *See, e.g., Kuntz v. Messerli &*

*Kramer P.A.*, No. 16-CV-2676 (JNE/BRT), 2017 WL 3332222, at *3 (D. Minn. Aug. 4, 2017).

Barry is one of the most accomplished consumer's rights litigators in Minnesota.

It follows, then, that his hourly rate would be at the high end of the range of reasonable

hourly rates for representation in FDCPA litigation in the Twin Cities. But the hourly

rate that Barry requests is nevertheless unreasonably high—on the order of 50 to 100

percent higher than the rates that judges in this District have typically approved in

straightforward FDCPA cases in recent years (including for the services of other

comparably experienced attorneys). *See, e.g., Woodward v. Credit Serv. Int'l Corp.*, No. 23-

CV-0632 (KMM/ECW), 2024 WL 228454, at 3–4 (D. Minn. Jan. 22, 2024) (finding rate of $350 per hour reasonable for attorney with 37 years' experience in case involving minimum litigation and which was resolved in "a few months"); *Beckler v. Rent Recovery Sols., LLC*, No. 21-CV-2680 (WMW/DTS), 2022 WL 17689842, at *2–3 (D. Minn. Dec. 15, 2022), *aff'd* 83 F.4th 693 (8th Cir. 2023) ($450 per hour for an attorney with "nearly 30" years' experience and $300 per hour for attorney with "more than 10" years' experience).

Cheesman points to a 2023 decision in which Judge Eric Tostrud determined that Barry's claimed rate of $600 per hour was reasonable. *See Kelly v. United Payment Ctr.*, No. 22-CV-1799 (ECT/DLM), 2023 WL 6285184, at *3 (D. Minn. Sept. 27, 2023); Pl. Mem. at 23–24. But a decision about attorney's fees by one federal judge sets neither a floor nor a ceiling that other federal judges must honor. Putting that aside, *Kelly* was a highly contentious matter that was vigorously litigated and that settled only after the plaintiff (represented by Barry) had successfully opposed a motion to dismiss and prepared and filed a motion for summary judgment. *See generally* Case No. 22-CV-1799 (ECT/DLM). This is a much different case—one that was not at all contentious and that required less sophisticated representation of the plaintiff.

Barry represented Cheesman for only about three months before accepting the Offer of Judgment. During those three months, there was minimal discovery and no

motion practice whatsoever.  Barry was also working with experienced co-counsel, who could have capably performed every task that Barry performed, but at a cheaper rate. Moreover, Barry's expertise in FDCPA litigation may be exceptional, but exceptional expertise was not required to litigate this straightforward FDCPA action.  For these reasons, the Court finds that a rate of $600 per hour for Barry's services in this case is reasonable.  *See Zhulin v. I.Q. Data Int'l, Inc.*, No. 23-CV-2387 (JMB/JFD), 2024 WL 4589879, at *2 (D. Minn. Oct. 28, 2024) (declining to approve Barry's requested hourly rate of $650 and finding instead that rate of $600 was reasonable where case did not involve complex legal issues and settled without dispositive motion practice).

For many of the same reasons, the Court finds that Ryder's claimed hourly rate of $500 is also unreasonably high.  *See again, e.g.*, *Beckler*, 2022 WL 17689842, at *2–3 ($450 per hour for attorney with "nearly 30" years' experience).  In light of the above-cited authorities, and in light of the Court's own knowledge of the prevailing rates in the Twin Cities legal market, the Court finds that $400 is a reasonable hourly rate for Ryder's work in this case.

### B.  *Number of Hours Reasonably Expended*

Cheesman seeks compensation for 61.8 hours worked by Barry and 56.3 hours worked by Ryder, for a total of 118.1 hours.  Barry Decl. ¶14; Ryder Decl. ¶ 15.  WFI objects that several of the tasks for which Barry and Ryder billed were administrative

tasks not properly billed by an attorney; took place after the Offer of Judgment was accepted and, by the terms of the Offer of Judgment, are not recoverable; and were otherwise redundant and unnecessary. WFI also objects that Cheesman fails to show why this case necessitated the services of two attorneys, each of whom had sufficient experience and expertise to have handled the case by himself. The Court largely agrees with WFI.

First, the Court agrees that the terms of the Offer of Judgment plainly preclude Cheesman's recovery of fees incurred after September 18, 2024—the date the Offer of Judgment was made. *See* ECF Nos. 47 at 12, 31-1 ¶ 3. The Offer of Judgment states that, in addition to damages, "the judgment shall . . . include an amount for reasonable costs and attorneys' fees incurred with respect to the claims against WFI *through the date of this offer*." ECF No. 31-1 ¶ 3 (emphasis added); *see Young v. Diversified Consultants, Inc.*, 554 F. Supp. 2d 954, 957 (D. Minn. 2008) (finding plaintiff could not recover fees incurred after date of Rule 68 Offer of Judgment with similar limiting language). In her briefing, Cheesman argues that this language could not bar the recovery of post-judgment fees because no such "claims"—that is, claims for post-judgment fees—existed at the time of the Offer of Judgment. Pl. Mem. at 19. The Court is not persuaded.

The phrase "through the date of this offer" is a temporal limitation that clearly modifies "incurred," not claims. To say "attorneys' fees incurred . . . through the date of this offer" makes sense. To say "claims against WFI through the date of this offer" makes no sense. (The matter would be closer if the word "made" appeared after "claims," but it does not.)

Moreover, the term "claims," as it appears elsewhere in the Offer of Judgment, plainly refers to "claims in [Cheesman's] amended complaint (or which could have been included in [her] amended complaint)." ECF No. 31-1 ¶¶ 1, 4. In other words, the Offer of Judgment places one limitation on "attorneys' fees" (such fees must be "incurred . . . through the date of this offer") and a separate limitation on "claims" (such claims must appear in the amended complaint).

The Court therefore interprets the disputed clause to provide that the Offer of Judgment "shall . . . include" compensation for "fees incurred . . . through [September 18, 2024]" for legal work done "with respect to" Cheesman's "claims"—that is, her *causes of action* —"against WFI." WFI did not, in the Offer of Judgment, agree to fund Cheesman's efforts to recover attorney's fees from WFI after Cheesman accepted the Offer of Judgment. For these reasons, the Court subtracts the 18.3 hours Barry billed

and the 10.4 hours Ryder billed after September 18, 2024. *See* ECF Nos. 36-2 at 3–4, 37-2 at 9–10.[2]

Second, the Court agrees that WFI should not have to pay Barry $600 per hour for time spent on administrative tasks that could easily have been performed by a legal assistant, legal secretary, or law clerk. Barry requests fees for 1.9 hours of such work—opening a client file (0.4 hours); "[r]eview[ing] and organiz[ing]" the file (1.2 hours, reduced here to 0.6 hours); "[d]raft[ing] and fil[ing]" a notice of appearance (0.2 hours); "[f]il[ing] [the] amended complaint" and stipulation to amend (0.1 hours); filing a stipulation and "sen[ding] [a] proposed order" to the magistrate judge (0.3 hours); and "fil[ing] documents on ECF" and "sen[ding] [a] proposed order to chambers" (0.3 hours). ECF No. 36-2 at 2–3. The Court accordingly subtracts 1.9 hours from Barry's proposed lodestar.

---

[2]Even if the terms of the Offer of Judgment did not preclude the recovery of fees incurred after September 18, 2024, the Court would substantially cut the amount of fees sought by Barry and Ryder for pursuing a fee award. The two attorneys report spending a total of 30 hours working on their fee applications. That is a *lot* of time to spend on a fee application in a small case such as this one. By comparison, this Court has pending before it a fee application in a case that lasted 3.5 years, that was tried to a jury after extensive discovery and motion practice, and on which over a dozen individuals billed time. In that case, the plaintiff's attorneys spent a *total* of one hour more on their fee application than Barry *alone* spent on his fee application here. *See* Case No. 21-CV-1134 (PJS/ECW). Moreover, Barry has moved for attorney's fees in FDCPA litigation in this District many times. He seems to have used in this case many of the same documents that he filed in other cases. *See* No. 23-CV-2387 (JMB/JFD), ECF Nos. 42, 42-1, 42-4, 42-5; No. 22-CV-1799 (ECT/DLM), ECF Nos. 58, 58-1, 58-4.

Third, it is not reasonable to force WFI to pay for the unnecessary motion drafting and deposition preparation that Barry billed to this matter. WFI promptly agreed to stipulate to Cheesman's amendment of the complaint, ECF No. 48 ¶ 9, avoiding the need for motions practice, and no depositions were even noticed (much less taken) prior to the Offer of Judgment. The Court subtracts 4.3 hours to account for time billed to "[d]raft[ing [a] Motion to Amend [the] complaint" (1.9 hours); "[r]eview[ing] all Bates Stamped discovery in preparation for taking depositions" (1.6 hours); and a miscellaneous "[d]raft[ing] legal pleading for filing" (0.8 hours) two days before the date of the Offer of Judgment. ECF No. 36-2 at 2–3.

Fourth, the Court subtracts time entries that reflect examples of "double billing," such as one attorney's review of the work of the other. And again, the Court questions why two attorneys—especially two attorneys with such pedigrees and such high billing rates—were required to represent Cheesman in this run-of-the-mill FDCPA case. *See Kuntz*, 2017 WL 3332222, at *2 ("Neither the subject matter, nor the procedural history, of this case necessitated the work of two attorneys." (citing *Hensley*, 461 U.S. at 434)). Cheesman offers no specific reason to believe that having two attorneys working on this case increased efficiency or was instrumental to securing the damages she obtained, *see, e.g.*, ECF No. 60 (stating, without elaboration, that "[s]urely there is a connection between obtaining more than triple the available statutory damages and having two

attorneys on the case"), nor can the Court find any evidence to support such a belief. On the contrary, the record is clear that having two attorneys working on this case created *inefficiencies*.

Cheesman points to the number of attorneys apparently employed by WFI in arguing that her representation by two highly experienced attorneys was reasonable. Cheesman is comparing apples to oranges. A paying client is free to choose to pay *unreasonable* fees—i.e., to employ, and compensate, as many attorneys as she chooses. But the Court can award only *reasonable* fees. Because the Court concludes that either Barry or Ryder was capable of handling this case by himself, and because nothing in the record supports Cheesman's contention that having both attorneys on the case enhanced efficiency or was integral to securing $6,001.00 in damages, the Court subtracts 10.3 hours from Barry's proposed lodestar and 12.6 hours from Ryder's proposed lodestar. *See* ECF Nos. 36-2 at 2–3 (billing entries that describe conferring with co-counsel or reviewing work done or communications sent by co-counsel), 37-2 at 5–9 (same); *see also Kuntz*, 2017 WL 3332222, at *2 (finding 72.5 hours of attorney work unreasonable in case where plaintiff accepted Offer of Judgment eight months after plaintiff filed suit and parties engaged in some discovery but no dispositive motion practice, and awarding fees for 22 hours of attorney work).

Finally, the Court applies an across-the-board 10-percent reduction to both Barry's and Ryder's adjusted lodestars, to approximate additional redundancies and inefficiencies created by having two attorneys handle this case. *See Fox v. Vice*, 563 U.S. 826, 838 (2011) (stating that, in determining a fee award, "trial courts need not, and indeed should not, become green-eyeshade accountants" but "may use estimates" in the service of achieving "rough justice, not . . . auditing perfection").

Applying these reductions, the Court calculates Barry's lodestar as $14,580.00 (24.3 hours[3] multiplied by a rate of $600 per hour) and calculates Ryder's lodestar as $11,988.00 (29.97 hours[4] multiplied by a rate of $400 per hour).

### C. Further Adjustments to the Lodestar

Cheesman argues that the Court should apply an enhancement to the lodestar in light of the results she obtained. "After a district court determines the lodestar amount, it may then consider other factors to adjust the fee upward or downward, including the important factor of the results obtained." *Marshall v. Anderson Excavating & Wrecking Co.*, 8 F.4th 700, 712 (8th Cir. 2021) (cleaned up). "There is no precise rule or formula for

---

[3]The Court reaches this figure by subtracting (18.3 + 1.9 + 4.3 + 10.3) from Barry's proposed 61.8 hours for a total of 27 hours, and then subtracting 2.7 (27 multiplied by (0.1)) from that figure, for a total of 24.3 hours.

[4]The Court reaches this figure by subtracting (10.4 + 12.6) from Ryder's proposed 56.3 hours for a total of 33.3 hours, and then subtracting 3.33 (33.3 multiplied by (0.1)) from that figure, for a total of 29.97 hours.

making these determinations," and "[t]he court necessarily has discretion in making this equitable judgment." *Hensley*, 461 U.S. at 436–37.

Here, Cheesman's attorneys undoubtedly obtained a good result for their client. But those same attorneys sought fees in an amount that, in the Court's opinion, were exorbitant. "A request for attorney's fees should not result in a second major litigation." *Id.* at 437. Here, Cheesman's request for attorney's fees resulted, not in "a *second* major litigation," but in the *only* major litigation. Cheesman's attorneys filed 40 pages of briefs in pursuit of their fee request, as well over 100 pages of supporting documents. At the same time, those same attorneys neglected to exercise reasonable billing judgment by discounting administrative tasks billed by Barry or eliminating redundancies created by having two attorneys work on the case.

To make matters worse, Cheesman's attorneys put in this work *after* WFI offered to pay Cheesman $25,000 in attorney's fees on September 17, 2024—an eminently reasonable offer to which Cheesman apparently did not even respond. *See* ECF Nos. 48 ¶ 31, 48-10. Against this backdrop, the Court is not going to do any enhancing of the fee award.

II.  COSTS

Cheesman moves for an award of costs totaling $502.35, an amount that is reasonable, and that WFI does not dispute.  Pl. Mem. at 34; ECF No. 37 ¶ 15.  The Court will grant Cheesman's motion.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT:

1.    Plaintiff's motion for attorney's fees pursuant to Local Rule 54.3, the parties' Offer of Judgment executed pursuant to Fed. R. Civ. P. 68, 15 U.S.C. § 1692k(a), and 15 U.S.C. § 1693m [ECF No. 33] is GRANTED IN PART as follows:

   a.    Plaintiff's attorney Peter Barry is awarded $14,580.00 in attorney's fees.

   b.    Plaintiff's attorney Randall Ryder is awarded $11,988.00 in attorney's fees.

2.    Plaintiff's motion for costs pursuant to Local Rule 54.3, the parties' Offer of Judgment executed pursuant to Fed. R. Civ. P. 68, 15 U.S.C. § 1692k(a), and 15 U.S.C. § 1693m [ECF No. 33] is GRANTED in the amount of $502.35.

-13-

Dated:  June 26, 2025

/s/ Patrick J. Schiltz
Patrick J. Schiltz, Chief Judge
United States District Court